# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW W. SMITH<br>30287 Beechgrove Road<br>Londonderry, Ohio 45647, | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| HONEYWELL SAFETY PRODUCTS USA, INC.<br>6766 Pontius Road<br>Groveport, Ohio 43125 | ) ) ) ) ) ) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve Also:**<br>Honeywell Safety Products USA, Inc.<br>c/o Corporation Service Company<br>50 West Broad Street<br>Suite 1330<br>Columbus, Ohio 43215 | ) ) ) ) ) ) ) ) | |
| Defendant. | ) | |

Plaintiff, Matthew W. Smith, by and through undersigned counsel, as his Complaint against Defendant Honeywell Safety Products USA, Inc. ("Honeywell"), states and avers the following:

## PARTIES, VENUE, & JURISDICTION

1. Smith is a resident of Londonderry, Vinton County, Ohio.

2. At all times herein, Smith was acting in the course and scope of his employment.

3. Honeywell is a domestic corporation that does business at 6766 Pontius Road, Groveport, Franklin County, Ohio 43125 ("Groveport Location").

4. Honeywell is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Smith is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

6. All material events alleged in this Complaint occurred in Franklin County, Ohio.

7. This Court has supplemental jurisdiction over Smith's state law claims pursuant to 28 U.S.C. § 1367 as Smith's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00408 against Honeywell ("Smith EEOC Charge").

10. On or about May 19, 2021, the EEOC issued a Notice of Right to Sue letter to Smith regarding the Charges of Discrimination brought by Smith against Honeywell in the Smith EEOC Charge.

11. Smith received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Smith has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Smith has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. On or about February 25, 2019, Smith began working for Honeywell.

15. Honeywell employed Smith as a warehouse supervisor.

16. Honeywell was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

17. At all times relevant herein, Smith was employed by Honeywell for at least 12 months and had at least 1,250 hours of service with Honeywell and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

18. Smith has diabetes.

19. In or about January 2020, Smith informed his building manager, Grant Denton, about his diabetes.

20. Smith's diabetes is a physical impairment.

21. Smith's diabetes significantly limits him in one or more major life activities.

22. Smith has a record of physical impairment.

23. Because of Smith's diabetes, Honeywell perceived Smith as disabled.

24. As soon as Denton learned about Smith's diabetes, he began to treat Smith differently than he treated Smith before.

25. In or about January 2020, Denton accused Smith of lying about having diabetes.

26. In or about January 2020, when Smith told Denton that he needed to watch what he ate due to his diabetes, Denton responded, "If you even are diabetic. I don't believe that."

27. After Denton learned about Smith's diabetes, Denton became hostile toward Smith at work.

28. After Denton learned about Smith's diabetes, Denton micromanaged Smith's work and began to single Smith out for criticism.

29. On Valentine's Day 2020, Denton offered Smith a chocolate-covered strawberry, knowing that Smith's diabetes prevented him from eating sugary foods.

30. On Valentine's Day 2020, Denton did not offer strawberries to anyone other than Smith.

31. On Valentine's Day 2020, Denton offered Smith the strawberry just to mock Smith for his diabetes.

32. When Smith replied, "You know I can't eat that," Denton laughed at Smith.

33. On or about February 25, 2020, Smith reported Denton's discrimination to HR representative Nicole Wild ("Report of Discrimination").

34. In the Report of Discrimination, Smith explained that Denton was picking on him due to his diabetes and singling him out for unfair treatment.

35. Honeywell has a policy against discrimination ("Discrimination Policy").

36. Honeywell's Discrimination Policy precludes retaliation against employees who complain about discrimination.

37. Alternatively, retaliation against employees who complain about discrimination is permitted by Honeywell.

38. Honeywell's Discrimination Policy precludes intimidation against employees who complain about discrimination.

39. Alternatively, intimidation against employees who complain about discrimination is permitted by Honeywell.

40. Honeywell's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

41. Honeywell's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

42. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by Honeywell.

43. Honeywell's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

44. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by Honeywell.

45. Honeywell has a policy to investigate reports of violations of its Discrimination Policy.

46. An investigation should include interviewing the complainant.

47. An investigation should include interviewing the subject of the complaint.

48. An investigation should include interviewing the subject of the reported discrimination.

49. An investigation should include interviewing witnesses to the reported discrimination.

50. An investigation should include getting a written statement from the complainant.

51. An investigation should include getting a written statement from the subject of the complaint.

52. An investigation should include getting a written statement from the subject of the reported discrimination.

53. In response to Smith's Report of Discrimination, Honeywell did not interview Smith.

54. In response to Smith's Report of Discrimination, Honeywell did not interview Denton.

55. In response to Smith's Report of Discrimination, Honeywell did not interview witnesses.

56. In response to Smith's Report of Discrimination, Honeywell did not get a written statement from Smith.

57. In response to Smith's Report of Discrimination, Honeywell did not get a written statement from Denton.

58. In response to Smith's Report of Discrimination, Honeywell did not get a written statement from witnesses.

59. Honeywell did not investigate Smith's Report of Discrimination.

60. In response to the Report of Discrimination, Honeywell did not give Denton a verbal warning.

61. In response to the Report of Discrimination, Honeywell did not give Denton a written warning.

62. In response to the Report of Discrimination, Honeywell did not give Denton a final warning.

63. In response to the Report of Discrimination, Honeywell did not give Denton a suspension.

64. In response to the Report of Discrimination, Honeywell did not give Denton a demotion.

65. On or about February 27, 2020, Smith went on leave due to a surgery to his right rotator cuff ("Leave").

66. Prior to taking the Leave, Smith applied for short-term disability leave.

67. On or about February 27, 2020, Smith qualified for FMLA leave.

68. Honeywell approved Smith's Leave.

69. Honeywell approved Smith for short-term disability leave.

70. On or about June 29, 2020, Smith returned to work.

71. On or about July 3, 2020, Honeywell terminated Smith's employment ("Termination").

72. On or about June 30, 2020, Murali Mandi and Matt Little informed Smith about the Termination ("Termination Call").

73. Mandi was chief operating officer for Honeywell.

74. Little was human resources director for Honeywell.

75. In the Termination Call, Mandi and Little alleged that the reason for the Termination was a corporate restructuring.

76. In the Termination Call, Mandi and Little did not allege that the reason for the Termination was poor performance.

77. Honeywell did not terminate Smith's employment due to his performance.

78. In the Termination Call, Mandi and Little did not allege that the reason for the Termination was poor attendance.

79. Honeywell did not terminate Smith's employment due to his attendance.

80. In the Termination Call, Mandi and Little did not allege that the reason for the Termination was disciplinary.

81. Honeywell did not terminate Smith's employment for disciplinary reasons.

82. In or about July 2020, Smith was the only employee terminated at the Groveport Location.

83. In or about July 2020, Honeywell had more than 300 employees at the Groveport Location.

84. Smith worked fewer than three days between the Report of Discrimination and the Termination Call.

85. The Termination Call was one day after Smith returned from the Leave.

86. Honeywell has a progressive disciplinary policy ("Discipline Policy").

87. A verbal warning is the lowest level of discipline in the Discipline Policy.

88. Smith did not receive a verbal warning before the Termination.

89. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

90. Smith did not receive a written warning before the Termination.

91. A termination is the highest level of discipline in the Discipline Policy.

92. Honeywell knowingly skipped progressive disciplinary steps in terminating Smith.

93. Honeywell knowingly terminated Smith's employment.

94. Honeywell knowingly took an adverse employment action against Smith.

95. Honeywell knowingly took an adverse action against Smith.

96. Honeywell intentionally skipped progressive disciplinary steps in terminating Smith.

97. Honeywell intentionally terminated Smith's employment.

98. Honeywell intentionally took an adverse employment action against Smith.

99. Honeywell intentionally took an adverse action against Smith.

100. Honeywell knew that skipping progressive disciplinary steps in terminating Smith would cause Smith harm, including economic harm.

101. Honeywell knew that terminating Smith would cause Smith harm, including economic harm.

102. Honeywell willfully skipped progressive disciplinary steps in terminating Smith.

103. Honeywell willfully terminated Smith's employment.

104. Honeywell willfully took an adverse employment action against Smith.

105. Honeywell willfully took an adverse action against Smith.

106. On or about July 3, 2020, Honeywell terminated Smith's employment because of his disability.

107. On or about July 3, 2020, Honeywell terminated Smith's employment because of his perceived disability.

108. On or about July 3, 2020, Honeywell terminated Smith's employment because of his opposition to discrimination.

109. On or about July 3, 2020, Honeywell terminated Smith's employment in retaliation for his use of qualified FMLA leave.

110. As a direct and proximate result of Honeywell's conduct, Smith suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

111. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. Honeywell treated Smith differently than other similarly-situated employees based on his disabling condition.

113. Honeywell treated Smith differently than other similarly-situated employees based on his perceived disabling condition.

114. On or about July 3, 2020, Honeywell terminated Smith's employment without cause.

115. Honeywell terminated Smith's employment based on his disability.

116. Honeywell terminated Smith's employment based on his perceived disability.

117. Honeywell violated ADA when it discharged Smith based on his disability.

118. Honeywell violated ADA when it discharged Smith based on his perceived disability.

119. Honeywell violated ADA by discriminating against Smith based on his disabling condition.

120. Honeywell violated ADA by discriminating against Smith based on his perceived disabling condition.

121. As a direct and proximate result of Honeywell's conduct, Smith suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

122. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. Honeywell treated Smith differently than other similarly-situated employees based on his disabling condition.

124. Honeywell treated Smith differently than other similarly-situated employees based on his perceived disabling condition.

125. On or about July 3, 2020, Honeywell terminated Smith's employment without cause.

126. Honeywell terminated Smith's employment based on his disability.

127. Honeywell terminated Smith's employment based on his perceived disability.

128. Honeywell violated R.C. § 4112.02 when it discharged Smith based on his disability.

129. Honeywell violated R.C. § 4112.02 when it discharged Smith based on his perceived disability.

130. Honeywell violated R.C. § 4112.02 by discriminating against Smith based on his disabling condition.

131. Honeywell violated R.C. § 4112.02 by discriminating against Smith based on his perceived disabling condition.

132. As a direct and proximate result of Honeywell's conduct, Smith suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III:  RETALIATION IN VIOLATION OF ADA

133. Smith restates each and every prior paragraph of this complaint, as if it were fully restated herein.

134. As a result of Honeywell's discriminatory conduct described above, Smith complained about the disability discrimination he was experiencing.

135. Subsequent to Smith's Report of Discrimination, Honeywell terminated Smith's employment.

136. Smith worked fewer than three days between the Report of Discrimination and the Termination Call.

137. Honeywell's actions were retaliatory in nature based on Smith's opposition to the unlawful discriminatory conduct.

138. Pursuant to ADA, it is an unlawful discriminatory practice for an employer to retaliate against an employee for opposing disability discrimination.

139. As a direct and proximate result of Honeywell's conduct, Smith suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

140. Smith restates each and every prior paragraph of this complaint, as if it were fully restated herein.

141. As a result of Honeywell's discriminatory conduct described above, Smith complained about the disability discrimination he was experiencing.

142. Subsequent to Smith's Report of Discrimination, Honeywell terminated Smith's employment.

143. Smith worked fewer than three days between the Report of Discrimination and the Termination Call.

144. Honeywell's actions were retaliatory in nature based on Smith's opposition to the unlawful discriminatory conduct.

145. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

146. As a direct and proximate result of Honeywell's conduct, Smith suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF FMLA

147. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

148. During his employment, Smith utilized FMLA leave.

149. After Smith utilized his qualified FMLA leave, Honeywell retaliated against him.

150. Honeywell retaliated against Smith by terminating his employment.

151. Honeywell willfully retaliated against Smith in violation of 29 U.S.C. § 2615(a).

152. As a direct and proximate result of Honeywell's wrongful conduct, Smith is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Smith respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Honeywell to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Honeywell to restore Smith to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Smith for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Smith claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

                Respectfully submitted,

                */s/ Trisha Breedlove*_____
                Trisha Breedlove (0095852)
                Paul Filippelli (0097085)
                **THE SPITZ LAW FIRM, LLC**
                1103 Schrock Road, Suite 307
                Columbus, Ohio 43229
                Phone: (216) 291-4744
                Fax: (216) 291-5744
                Email: trisha.breedlove@spitzlawfirm.com
                Email: paul.filippelli@spitzlawfirm.com
                *Attorneys for Plaintiff Matthew W. Smith*

## JURY DEMAND

Plaintiff Smith demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
